MYSTIC MARINELIFE AQUARIUM, INC., ET AL. *v.* JOSEPH N. GILL, COMMISSIONER OF ENVIRONMENTAL PROTECTION, ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued March 15—decision released August 1, 1978

*Robert M. Davidson,* with whom, on the brief, was *Alan R. Spirer,* for the appellants (plaintiffs).

*Francis J. Pavetti,* with whom, on the brief, was *Jane W. Freeman,* for the appellee (defendant George P. Korteweg).

*Alan M. Kosloff,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (named defendant).

ARTHUR H. HEALEY, J. The plaintiffs appealed to the Superior Court in Hartford County pursuant to General Statutes § 25-17[1] from a decision of the defendant Joseph N. Gill, commissioner of environmental protection, in granting a permit to the defendant George P. Korteweg. The Superior Court dismissed the appeal of the plaintiff Mystic Seaport,

[1] "[General Statutes] Sec. 25-17. APPEAL FROM COMMISSIONER. EXCEPTION. Any person, firm or corporation, whether public or private, aggrieved by any order, authorization or decision of the commissioner other than an order under section 22a-6b may appeal therefrom to the superior court for Hartford county within fifteen days after the issuance of such order, authorization or decision. Such appeal shall have precedence in the order of trial in accordance with the provisions of section 52-192."

Inc., hereinafter Mystic Seaport, and dismissed the appeal of the remaining plaintiffs for lack of jurisdiction.

Korteweg had submitted an application pursuant to General Statutes § 25-7d for a permit to erect structures and perform work incidental thereto. The application sought approval for the construction of a floating dock and other structures in the Mystic River.[2] The Mystic River, at this location, is a tidal, coastal and navigable water.

The commissioner referred the application to a hearing examiner for the purpose of conducting a public hearing. A public hearing was held on Korteweg's application. Thereafter, the hearing officer made a report which contained findings of fact and recommended that the commissioner deny the application. Pursuant to regulations of the department of environmental protection, Korteweg filed written exceptions to this report, and petitioned for and obtained a hearing before the commissioner. At the hearing before the commissioner, Mystic Seaport was permitted to intervene, oral arguments were heard, but no additional evidence was taken. Following this hearing, the commissioner, notwithstanding the recommendation of the hearing examiner, filed a memorandum of final decision wherein he made certain findings of fact on Korteweg's application and concluded that the application should be granted. The appeal by the plaintiffs to the Superior Court in Hartford County followed the granting of the application by the commissioner. An evidentiary hearing, limited to the question of aggrievement, was held by the Superior Court.

[2] The Mystic River, the natural resource itself, was dropped as a plaintiff at the trial level.

On this appeal the plaintiffs have made a number of assignments of error. They assign error to the finding of certain facts without evidence, to certain conclusions reached by the court, to the overruling of certain of their claims of law and to the rendering of judgment for the defendants when the court's conclusions do not sustain that judgment for some twelve reasons assigned.

The Superior Court made a limited finding confined to the issue of aggrievement and it is not subject to any material correction. The finding discloses the following facts: Frank Kneedler is the director of administration of the plaintiff Mystic Seaport. Mystic Seaport is a maritime museum and owns land adjacent to the property which is the subject of the Korteweg application, i.e., the "permit property." Mystic Seaport owns a small, separate piece of property adjacent to the permit property which is separate and apart from the maritime museum premises. The plaintiff Mystic Seaport utilizes its maritime museum property for commercial enterprises including two restaurants grossing $1,000,000 per year in sales and a retail store grossing an additional $1,000,000 per year in sales. Korteweg also plans to maintain a restaurant at the permit property. The Mystic River plays a vital role in the daily operation of the seaport and the river's ecology is essential to the seaport's economic interests and its historical and recreational endeavors. In its operations Mystic Seaport makes use of the Mystic River. Kneedler, in speaking for Mystic Seaport, was "fearful" that the consummation of the activity sanctioned by the permit which is the subject of the present litigation will adversely affect property owned by Mystic Seaport. The plaintiff Elm Grove Cemetery Association, Inc.,

owns real property in proximity to the subject property on which it operates a cemetery for burial purposes. The Mystic River provides a tranquil setting and produces an economic benefit to Elm Grove's operations. Warren B. Fish, who is president of Elm Grove, expressed "generalized fears," but there was no credible evidence that Elm Grove's property would be depreciated or otherwise injured by the proposed permit activity. Frederick C. Allard is the president of the plaintiff Mystic Bridge Residents Association. The membership of the association, which is comprised of residents and property owners of the Mystic section of Stonington, does not own any real property anywhere within the state of Connecticut. The Mystic River at the site of the permit property is at one of its greatest widths. Insofar as the area of the river where the activity sanctioned by the permit involved in this case is concerned, there was no evidence that members of the association have ever sailed or boated thereon. The plaintiff Eileen E. Ames owns real property on the west side of the Mystic River and her property is riparian. Ames is unable to view the permit property from her property. Mystic Seaport sponsors a boat program and thereby promotes racing. There will not be an interference with the racing programs occurring on the Mystic River should the activity which is the subject of the permit involved be realized. This racing is done on the Mystic River. Ames owns two boats, one larger than the other. Over the past twenty-five years, Ames has participated in five or six races on the Mystic River. Ames does not make use of her large boat at that site of the river involved in this litigation and, because of the depth of the water at that part of the river, Ames can make use of her small boat at that area only at high tide. The

plaintiff Richard P. Robinson owns real property on the west side of the Mystic River and that property is riparian. Robinson, who is a property owner on the west bank of the river uses the river for boating and ice skating in the vicinity of the permit property. He and his family make use of the river for boating and ice skating. The activity sanctioned by the permit involved, however, will not affect Robinson's use or utilization of his property. Robinson has not skated at that part of the river which is the subject of this case and he does not know whether his family has. Robinson does not know whether he has ever boated at that part of the river which is the subject of this case. Robinson cannot view the property which is the subject of this case from his property. Robinson expressed "generalized fears" of property value devaluation because of the proposed activity but could state no credible basis for this fear nor has he ever had his property appraised in light of the proposed activity. The plaintiff Roberta M. Burnett is not a property owner and resides about one quarter of a mile north of the proposed activity on leased premises. Her claim of aggrievement was that should the activity sanctioned by the permit involved be consummated, it will alter the river and interfere with her view of the river. She does not, however, know the extent and the dimensions of the proposed project. The plaintiff Louise Smith owns riparian real property on the west side of the river and she uses the river for fishing and rowing. She claims that the abandoned barge at the site of the proposed project is a benefit, but agrees that it should be removed if such removal would be a benefit to the environment.

The threshold issue on this appeal is that of aggrievement. The commissioner claims that the

Environmental Protection Act of 1971 [3] (hereinafter the EPA) does not contain any legislative pronouncement that a person can bring an appeal in the first instance, that nowhere does this act declare any person or class of persons "legislatively aggrieved," and that there is no legislative statement which allows anyone who intervenes in an administrative hearing to bring an appeal sua sponte to a court seeking review of an administrative action. The Superior Court held that Mystic Seaport did have standing as a "legislatively aggrieved" person to maintain its appeal for the limited purpose of raising environmental issues. Although the language of the EPA is in terms of intervention into an existing judicial review of an agency action or the initiation of an independent declaratory judgment or injunctive action, the Superior Court, while recognizing this, noted that Mystic Seaport would not have any existing appeal in which to intervene. This, according to the Superior Court, would thwart the purpose of the EPA which is remedial in nature and, as such, should be liberally construed. One basic purpose of the EPA is to give persons standing to bring actions to protect the environment. *Belford* v. *New Haven,* 170 Conn. 46, 54, 364 A.2d 194. A statute is not to be interpreted to thwart its purpose. *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498; *Turner* v. *Scanlon,* 146 Conn. 149, 157, 148 A.2d 334.

At the hearing before the commissioner, Mystic Seaport participated in that hearing and became a party by the filing of a verified pleading pursuant to General Statutes § 22a-19. General Statutes

---

[3] General Statutes §§ 22a-14 to 22a-20, inclusive.

§ 22a-19 permits any person to intervene in any administrative, licensing or other proceeding and in any judicial review thereof made available by law. It further provides that the intervenor "may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." Moreover, § 25-17, although it appears in chapter 473 of the General Statutes, refers to the taking of appeals from the commissioner by one aggrieved "by any order, authorization or decision of the commissioner *other than an order under section 22a-6b* . . . ." (Emphasis added.) Section 22a-6b appears in chapter 439 of the General Statutes which concerns the "Environmental Protection Department and State Policy." It appears that the legislature intended that § 25-17 apply to appeals from the commissioner of environmental protection except as to orders under § 22a-6b. Therefore, because Mystic Seaport became a party under § 22a-19 (a) in filing a verified pleading, which set the parameters of the issues it could raise on this appeal, there is no question here that Mystic Seaport can appeal. That appeal, however, is limited to raising environmental issues only, as the Superior Court properly held. Therefore, having become a proper party in the administrative proceeding, Mystic Seaport had statutory standing to appeal for the limited purpose of raising environmental issues. *Belford* v. *New Haven,* supra, 53-54.

As we have already noted, the Superior Court dismissed the appeal as to all the plaintiffs except Mystic Seaport for lack of jurisdiction and dis-

missed the appeal as to Mystic Seaport. The plaintiffs claim that the Superior Court erred in determining the standards for aggrievement under § 25-17 and in concluding, applying the test of § 25-17, that none of the plaintiffs with the possible exception of Mystic Seaport was aggrieved. The Superior Court determined that Mystic Seaport was not "classically" aggrieved, but that it was legislatively or statutorily aggrieved for the limited purpose of raising certain environmental issues. "Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. The court's conclusions are to be tested by the findings and not by the evidence." *Yale University* v. *New Haven,* 169 Conn. 454, 464, 363 A.2d 1108.

The plaintiffs claim that the Superior Court erred in determining the standards for aggrievement under § 25-17 which provides that any person "aggrieved by any order, authorization or decision of the commissioner" may appeal therefrom to the Superior Court in Hartford County. In doing so, they urge this court to reassess its standards for determining aggrievement, realizing not only that aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal but that the standards control the class of persons who can invoke judicial review. They claim that the environmental issues in this case provide additional considerations in determining the class of persons who should have access to our courts.

The trial court and the parties addressed the issue of the standing of the plaintiffs. "The 'fundamental aspect of standing . . . [is that] it focuses on the

party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated.'" *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947; *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497. When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded. *Flast* v. *Cohen,* supra, 99–100. The concepts of "standing" and "legal interest" are to be distinguished. The legal interest test goes to the merits, whereas "standing" concerns the question "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184; see *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318. In assessing suggested federal parameters, it must be noted that the United States Supreme Court has said that the interest alleged by a complainant to have been injured "may reflect 'aesthetic, conservational, and recreational' as well as economic values." *Association of Data Processing Service Organizations, Inc.* v. *Camp,* supra, 154. That court took care to say, however, in *Sierra Club* v. *Morton,* 405 U.S. 727, 738, 92 S. Ct. 1361, 31 L. Ed. 2d 636, that "broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury."

The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, "the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89, and cases therein cited. We recognize that the test for determining aggrievement is broader than injury to real property and that the "interest" which may be the subject of aggrievement need not be confined to an interest in real property. The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. *Nader* v. *Altermatt,* supra, 53; *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 700, 345 A.2d 563; see 2 Cooper, State Administrative Law, pp. 538–41. Proof of aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 509, 242 A.2d 705.

The plaintiffs claim that the trial court erred in determining the standards for aggrievement under § 25-17. The plaintiffs claim that the trial court, in holding that to be aggrieved within the meaning of § 25-17 requires that property rights be adversely affected by an "order, authorization or decision of the commissioner" is wrong because limiting aggrievement to injury to property is an "overly restrictive and improper standard of aggrievement."

They claim that the environmental issues in this appeal provide additional considerations in determining the class of persons who should have access to our courts. The plaintiff Mystic Seaport has alleged injury to its property rights. The plaintiffs also claim that they are within the zone of interest protected by General Statutes § 25-7b which requires the commissioner on granting permits to act with due regard for "recreational use of public waters, with proper regard for the rights and interests of all persons concerned," reasoning that "these statutorily protected interests would constitute specific personal and legal interests for the purpose of determining aggrievement."

We are not required to apply federal precedent in determining the issue of aggrievement. *New Haven* v. *Public Utilities Commission*, supra, 702. Aggrievement is a matter to be determined solely on the basis of Connecticut law. Id., 701. While *Sierra Club* posited an injury-in-fact test, the United States Supreme Court, in a case decided after *Sierra Club*, stressed the importance of the fact-that the person seeking review be injured "for it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States* v. *Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687, 93 S. Ct. 2405, 37 L. Ed. 2d 254. In *SCRAP*, which involved an environmental group, the court articulated the need for specific and perceptible harm that must be true and capable of proof at trial. *United States* v. *SCRAP*, supra, 688–89; see also *Evans* v. *Lynn*, 537 F.2d 571, 591 (2d Cir.).

The statutory scheme under which this appeal was taken pursuant to § 25-17 by these plaintiffs is not disserved by deciding the issue of aggrievement under our well-settled rule recently reaffirmed in *Nader* v. *Altermatt*, supra; see also *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 387, 377 A.2d 1119. Mindful that it is a fundamental concept of judicial administration that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity; *Waterbury Trust Co.* v. *Porter,* 130 Conn. 494, 498, 35 A.2d 837; the plaintiffs were required to plead and prove some injury in accordance with our rule on aggrievement. *Nader* v. *Altermatt,* supra, 54–55. "It was the function of the trial court to determine as to each plaintiff, first, whether the plaintiffs' allegations if they should be proved would constitute aggrievement as a matter of law, and, second, if as a matter of law they would constitute aggrievement, then whether each plaintiff proved the truth of his allegations." *Nader* v. *Altermatt,* supra.

Chapter 473 of the General Statutes is entitled "Water Resources" and contains provisions relevant to this appeal. Section 25-7b places upon the commissioner the duty of regulation of the erection of structures in tidal, coastal or navigable waters with regard to be had to certain considerations set out in that statute. The procedures for obtaining a permit for the erection of such structures are set out in § 25-7d. "To be aggrieved within the meaning of § 25-17 requires that property rights be adversely affected by an 'order, authorization or decision' of the commission[er]." *Sachem's Head Assn.* v.

*Lufkin,* 168 Conn. 365, 367, 362 A.2d 519, citing *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 94, 318 A.2d 115. We have already stated that the property rights that may be subject to aggrievement need not be confined to real property rights. The trial court concluded that none of the plaintiffs, with the possible exception of Mystic Seaport, was aggrieved, pointing out there was no credible evidence that the property rights of any of the other plaintiffs would be adversely affected by the challenged action. It ultimately concluded that, applying this test, Mystic Seaport was not aggrieved. Aggrievement is an issue of fact; *Luery* v. *Zoning Board,* 150 Conn. 136, 140, 187 A.2d 247; and credibility is for the trier of the facts. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58. "Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. The court's conclusions are to be tested by the findings and not by the evidence. *Hames* v. *Hames,* 163 Conn. 588, 592, 316 A.2d 379; *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92. Conclusions logically supported by the finding must stand." *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 504, 363 A.2d 1055. These plaintiffs have also not shown aggrievement to any legally protected interest under the statute.

The plaintiff Burnett is not a property owner. Another plaintiff, Mystic Bridge Residents Association, owns no real property anywhere in Connecticut. Although its membership is comprised of residents and property owners of the Mystic section of the town of Stonington, the association itself owns no real property. It cannot represent its members based on their property interests. *Connecticut Society of Architects, Inc.* v. *Bank Bldg. & Equip-*

*ment Corporation,* 151 Conn. 68, 74, 193 A.2d 493. With respect to the plaintiffs Elm Grove, Mystic Bridge Residents Association, Roberta M. Burnett and Louise Smith, the trial court concluded that it had not been established that any legally protected interest of any of these plaintiffs had been specially and injuriously affected by the decision and that there was not any credible evidence respecting the extent, if any, of the likely depreciation of their respective property, as well as no credible evidence of any other adverse effect in their property, if any, resulting from the proposed activity. No useful purpose would be served by setting out the basis for determining, as we do here, that this conclusion must stand, other than the fact that there was not any credible evidence to establish any such claims. It must be said, however, that these conclusions, concerned with no evidence at all of the diminution of the property value of these plaintiffs, go to the core of their claim of aggrievement and must stand. Moreover, a conclusion based on generalized fears of what the challenged activity would bring about as stated by various plaintiffs is not sufficient to establish aggrievement. *Nader* v. *Altermatt,* supra, 59; *Joyce* v. *Zoning Board of Appeals,* 150 Conn. 696, 698, 187 A.2d 239.

The plaintiff Mystic Seaport owns land adjacent to the property which is the subject of the challenged permit. The trial court concluded that "[t]here has been no showing and there is no evidence that there will be a diminution, substantial or otherwise, of the value of that property owned by Mystic Seaport should the activity sanctioned by the permit . . . be consummated." Additionally, the trial court found that "[t]here has been no showing and there is no evidence that should the activity sanctioned

by the permit . . . be consummated it will affect, substantially or otherwise, the operations that the Mystic Seaport makes use of with regard to property owned by it, abutting that of the subject property." Mystic Seaport appears to claim that its property would be subject to greater shoaling by the activity allowed by the permit. Shoaling was not even alleged in the substituted complaint as an element of any asserted aggrievement. Mystic Seaport does not refer to any evidence of shoaling offered to the trial court on the issue of aggrievement. It does point, however, to the hearing examiner's report in that connection. While admitting that aggrievement must be established in the trial court and while conceding that it "might have sought to meet its burden of proof by presenting evidence to the court about shoaling," it maintains that it could properly rely on the hearing examiner's record to establish this fact. We do not agree. The plaintiff Mystic Seaport has the burden of proving aggrievement in the trial court. *Nader* v. *Altermatt,* supra; *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705. The trial court concluded that the evidence concerning shoaling before the hearing examiner "was initially objected to at the hearing and is a matter of dispute." Of course, the findings of a trial examiner are not binding upon the agency which he serves; *Peterson* v. *Gardner,* 391 F.2d 208, 209 (2d Cir.); but the agency is not at liberty to ignore such findings. *Nichols* v. *Cohen,* 290 F. Sup. 207, 210 (S.D. Ill.). Nor did the commissioner ignore such findings, as will be seen below. This court agrees with the trial court in its conclusion that the issue of aggrievement, in the absence of supporting evidence, must be found against Mystic Seaport. See *Nader* v. *Altermatt,* supra.

We turn now to Mystic Seaport's claim that the trial court erred in concluding that it had statutory standing to appeal only for the limited purpose of raising environmental issues. This plaintiff claims standing as an aggrieved person because of the provisions of the EPA, General Statutes §§ 22a-14 to 22a-20, inclusive. Section 22a-19 permits any person to intervene as a party "[i]n any administrative, licensing or other proceeding, and in any judicial review thereof" on the filing of "a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." Mystic Seaport filed the requisite pleading at the administrative level and thus became a party. Since the proposed project involved the erection of a structure on the Mystic River a duty was imposed upon the commissioner under § 22a-19 (b) to consider whether the proposed project does or is reasonably likely to cause unreasonable pollution, impairment or destruction of the river or of destroying the public trust in the air, water or other natural resources of the state, and, if so, to reject the project so long as, considering all the relevant circumstances, there is a reasonable and prudent alternative. This was essentially one of the trial court's conclusions and, significantly, it is not attacked by the plaintiffs. Mystic Seaport claims that all the issues, environmental and nonenvironmental, it raises are required to be given judicial review. This is not so. It is clear that one of the basic purposes of the EPA is to give persons standing to bring actions to protect the environment and standing is conferred only to protect the natural resources of the state from pollution or destruction.

*Belford* v. *New Haven,* 170 Conn. 46, 54, 364 A.2d 194. *Belford* was properly applied to limiting Mystic Seaport to raising only environmental issues.

The trial court concluded that the commissioner's decision to grant the permit was not arbitrary, illegal or otherwise contrary to law and that it was supported by the evidence. If this is so, then this conclusion must be sustained. *Lovejoy* v. *Water Resources Commission,* 165 Conn. 224, 228, 332 A.2d 108; *Thompson* v. *Water Resources Commission,* 159 Conn. 82, 87, 267 A.2d 434. The limited environmental issue involved here is whether the proposed project under the challenged permit is reasonably likely to cause unreasonable pollution, impairment or destruction of the Mystic River.

The legislative standards to be deliberated by the commissioner when considering an application of the nature involved here are those prescribed by General Statutes § 25-7b. That statute provides that the commissioner shall regulate the erection of structures, and work incidental thereto, in the tidal, coastal or navigable waters with due regard "for the prevention or alleviation of shore erosion, the use and development of adjoining uplands, the improvement of coastal and inland navigation for all vessels, including small craft for recreational purposes, the use and development of adjacent lands and properties and the interests of the state, including pollution control and recreational use of public waters, with proper regard for the rights and interests of all persons concerned."

In his memorandum of final decision the commissioner found (1) that obvious erosion has occurred at the site and there was testimony that approximately ten feet of upland has been lost by erosion

over the past years, (2) that erosion can be prevented or alleviated by the installation of a bulkhead or rip-rap wall, (3) that a derelict barge at the site is currently causing contamination of the waters in the area and this barge will be removed as part of the application, (4) that small boats have been moored at the site for the past thirty years, (5) that the department of environmental protection, water compliance unit, has determined that the proposal will not permanently violate Connecticut's water supply standards, (6) that the department of transportation found that no adverse effect could be noted to "land, navigable waterways and other transportation," (7) that coastal and inland navigation for all vessels, including small craft for recreational purposes, will be enhanced, (8) that the use and development of adjacent lands and properties will not be impaired by the proposal, and (9) that procedures under the department of environmental protection's rules of practice provide proper regard for the rights and interests of all persons concerned.

At this point it is evident that the commissioner in his decision, including his finding of facts, considered all the criteria in § 25-7b. We do not deem it necessary to refer to all the evidence in the record, but a careful examination discloses that there is support in the record for each of the findings made by the commissioner. Where the activity challenged may have an environmental impact, the commissioner has the additional responsibility under General Statutes § 22a-19 (b) to consider that impact. Under that statute the agency "shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources . . . and no conduct shall be authorized or approved which does, or

is reasonably likely to, have such effect . . . ." No pleading of the plaintiff Mystic Seaport in the record alleges any specific conduct as to what is claimed to constitute any alleged unreasonable pollution, impairment or obstruction of any natural resource. We cannot supply such an omission. We do point out that the record reasonably supports the conclusion that the proposed permit activity would not have the effect interdicted by § 22a-19 (b). This record includes evidence concerning the prevention or alleviation of erosion, the alleviation, if not elimination, of pollution and contamination by removal of the derelict barge from the present site, reduction of obnoxious odors and toxicity by removal of the barge, providing for a healthier and additional habitat for marine life, no adverse effect on land, navigable waterways and other transportation, no permanent violation of Connecticut water quality standards, the creation of minimal environmental impact by the installation of the floating dock facilities, and a positive effect on the marine life and the environment. On this record we find that the trial court's conclusion that the net effect on the environment would be positive is supported by the evidence.

The plaintiff Mystic Seaport makes much of the claim that the commissioner's decision was erroneous because it overruled his hearing examiner's report. It is fairly arguable whether the hearing examiner's findings of fact support the granting of the application, although he recommended the contrary. · In his decision, the commissioner correctly points out here that "[t]he Hearing Examiner obviously erred in making recommendations based on matters not within the purview of § 25-7b or interpretations not substantiated by the record and

contradictory to his finding of fact." In his decision, the commissioner considered the criteria required of him and weighed a number of environmental factors. Although the trial court said that there was evidence that a portion of the Mystic River estuary would be destroyed, it stated that it is not clear from the record that the environmental impact of such destruction would be such as to render it unreasonable. The question of what is reasonable is one of fact; *Harvey Realty Co.* v. *Wallingford,* 111 Conn. 352, 359, 150 A. 60; and, on this record, the trial court's conclusion cannot be disturbed. There was no evidence that the proposed project would produce pollution. The trial court's conclusion in sustaining the commissioner's decision is correct because that decision was not arbitrary, or illegal, and it was reasonably supported by the evidence in the record. *Lovejoy* v. *Water Resources Commission,* 165 Conn. 224, 228, 332 A.2d 108; *Thompson* v. *Water Resources Commission,* 159 Conn. 82, 87, 267 A.2d 434. In challenging the administrative action involved in this case, the plaintiff Mystic Seaport had the burden of proof in doing so. *Lovejoy* v. *Water Resources Commission,* supra. It has not sustained that burden.

Given the limited issues which Mystic Seaport is entitled to raise on this appeal, the other issues raised need not be discussed.

There is no error.

In this opinion the other judges concurred.