[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is concerned with an appeal from action taken by the Planning Zoning Board of the City of Milford (hereinafter referred to as "the Board") regarding the plaintiff's applications to construct "affordable housing" under the provisions of Chapter 126a, Affordable Housing Land Use Appeals.
AS TO THE ISSUE OF STANDING:
This court on July 16, 1997 held an evidentiary hearing bearing on the question of the standing of the plaintiff to prosecute this appeal. It was the position of the defendant that i the record was devoid of any reference of a "substantial adverse affect" on the viability of the housing development by reason of the action of the Board in denying or modifying the proposal of the plaintiff and consequently the appeal should be denied on the ground of lack of standing.
The plaintiff maintained that standing was a matter to be established by the offer of evidence relating to the question in the trial court.
This court now concludes that the matter of standing is properly before this court for determination. It seems clear from a reading of the statute, § 8-30g(b), that the question of adverse financial impact is determined following action of the Board (underlining mine). It is questionable whether such evidence is appropriate for presentation before any Planning and Zoning Commission, although it may well come out during hearings CT Page 11368 on the application as an incidental consideration.
In Fox v. Zoning Board of Appeals, 146 Conn. 665, 666, the court held that aggrievement (or standing to appeal) must be established in the trial court and the court must decide whether the appellant has sustained the burden of proving that fact. As the court noted, one could be aggrieved by the action of the municipal board and yet have been unaware of the situation until after the Board had acted. In the instant case, the plaintiff could not possibly anticipate the action of the Board and probable financial impact until the hearings on the application were concluded and the Board acted upon the application. This conclusion, that standing is a matter for determination by the trial court, was more recently confirmed in Mystic MarinelifeAquarium v. Gill, 175 Conn. 483, 493.
At the hearing before this court on the issue of substantial adverse impact, Richard Woline, a general partner in Saranor Apartments, the applicant herein, testified as to the financial impact upon the project's viability as a result of the Board's reduction in the number of units approved for construction. There were also other modifications directed by the Board which increased the cost of construction for the plaintiff. This coupled with limitations upon the rental rate as prescribed by authorities governing the conduct of affordable housing lead the court to conclude that the plaintiff has properly and adequately demonstrated that the restrictions and modifications imposed upon the applicant's proposal would have a substantial adverse affect or impact upon the project's viability and consequently the court finds the plaintiff is an aggrieved party and has standing to appeal.
As to the remaining plaintiffs in this action other than the named applicant Saranor, the appeal is dismissed as they were not parties to the application presented to the board.
By agreement of counsel, the defendant, Milford Planning and Zoning Board, is ordered to approve the requested change of zone from R-10 to RMF-16 with the following provision: that the change of zone from R-10 to RMF-16 be conditioned upon the use of the rezoned premises for affordable housing as provided in C.G.S. § 8-30g (a) and that in the event the plaintiffs, or their successors or assigns, fail to develop affordable housing on the rezoned premises, and/or fail to maintain the affordable status of the housing in accordance with the definition of an affordable CT Page 11369 housing development as provided in C.G.S. § 8-30g(a), the defendant, Milford Planning Zoning Board, may revoke said change of zone.
AS TO DENIAL OF APPLICATION AS FILED AND APPROVAL WITH MODIFICATIONS:
For a period of some years, Richard Woline, Rebecca Kear and others have owned and operated an "affordable housing development" on premises located in Milford, Connecticut known as "Saranor One". Believing that there existed a market and a need for additional affordable housing, they prepared and filed an application with the Board on June 22, 1995 for a change of zone of about 3.29 acres to permit construction of 104 units under the name of "Saranor Apartments, Section Two Limited Partnership", the present plaintiff. This property is identified in the minutes of the Board as "165 Platt St."
The proposed development was intended to comply with the requirements of "affordable housing" land use requirements as set out in Chapter 126a Connecticut General Statutes and was submitted to the Board as such. There were a number of meetings of the Board between that time and November 14, 1995 when the Board approved the application with modifications of the plan and a reduction of the number of permitted units to 84 from the applicant's requested number of 104. It is this action of the Board that the plaintiff appeals.
The record and the action of the Board supports the plaintiff's contention that the application of the plaintiff fell within the parameters of the definition of "affordable housing" to be located in the City of Milford and any actions of the Board to be tested by the review procedures set out in § 8-30g.
The matter of the construction of additional affordable housing units upon the premises described in the application actually came before the Board some months before the June application and was the subject of a number of public hearings thereafter. (See Record Ex. B — Application dated August 10, 1994). Numerous hearings were held in connection with this application concerning all aspects of the project but this application was subsequently withdrawn by the applicant. Thereafter, the applicant submitted the June 22, 1995 application (Rec. Ex.IIII) as previously referred to. The record indicates a general approval by all concerned agencies of the site plan and buildings to be erected thereon. (See Minutes of Meeting, CT Page 11370 January 26, 1995, Rec. Ex. bbb which summaries the plans reception and review by various agencies). While this exhibit predates the June 22, 1995 application, the consideration of this project extended from August 10, 1994 with the several applications submitted. A review of the record in its entirety displays the approval of the project both in concept and form by many individuals. Rec. Ex. 0000, minutes of the meeting of July 18, 1995 note that additional elderly development is needed in the community. The Activities Coordinator for Milford Elderly Services approved the project with plaudits for Richard Woline, the moving force behind the application and operator of the elderly housing development adjacent to the proposed development. The concerns of the various involved agencies were met by the applicant by revisions of the plan as the hearings proceeded. A concern expressed by some members of the Board as to the density of the project is reflected in the minutes of the meeting of July 25, 1995 (Rec. Ex. RRRRR). However, certain members of the Board, including the chairman, did not feel that 104 units as requested represented excessive density.
As previously noted, the Board finally approved the project but reduced the number of units from 104 to 84 on November 14, 1995 (Rec. Ex. ssssss). The Board previously has approved 74 units on the basis that the regulations only permitted that number and that there was no evidence offered why the Board should deviate from their plan of development even though the site does lend itself appropriately to more. (Rec. Ex. VVVVV). The minutes of the meeting of the Board on November 14, 1995 (Rec. Ex. RRRRRR) reflect the concern on the part of one member that while the City needs elderly and handicapped housing, this particular site was inappropriate, the proposal is an overuse and the buildings are too high. The concerns expressed by others centered around the plans exceeding the Zoning Regulations but there were no specific observations of any particular hazard being presented by the number of units being requested by the applicant. The Board then voted to approve 84 units. The court's review of the record indicates that the applicant met all the recommendations of the interested regulatory agencies either initially or subsequently by modifications. The only issue of contention between the Board and the applicant being the number of units and the height of the buildings. Nothing in the record suggests any significant detrimental effort upon the community by approval of this application.
Section 8-30g(c) C.G.S. places upon the commission in CT Page 11371 affordable housing applications the burden to prove that the reasons for a denial of an application for affordable housing are (1) supported by sufficient evidence in the record; (2) that the decision is necessary to protect substantial public interests in health, safety or other concerns; and (3) that such public interests clearly (underlying mine) outweigh the need for affordable housing and that such public interest cannot be protected by reasonable changes to the plan as submitted.
The rationale for placing the burden of proof upon the commission in the event of a denial of an application and an appeal was expressed in West Hartford Interfaith Coalition v.Town Council, 228 Conn. 511 where the court stated that the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state. Chief Judge Dupont of the Appellate Court in Wisniowski v.Planning Commission, 37 Conn. App. 303, 318 observed that "essentially every subdivision application must be approved unless there is a justifiable reason to deny the application."
From the record before it and against the backdrop of the statutes and the cases noted above, this court cannot conclude that the record supports the commission's conclusion that the difference between 84 units and the applicant's proposed 104 units is of sufficient import so that denial of the application was necessary to protect substantial public interests and that such difference clearly outweighed the need for such housing in the community.
Accordingly, the appeal is sustained and the Board is directed to approve the application as modified by the Board with the exception of the number of units which shall be 104 instead of 84.
Ripley, JTR