[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These consolidated appeals challenge a decision of the State of Connecticut Department of Public Utility Control (DPUC), which modified and approved a plan of reorganization submitted by Southern New England Telecommunication Corporation (SNET). The reorganization would discontinue the retail telephone operations of SNET's largest subsidiary, Southern New England Telephone Company (TELCO), and transfer end user retail operations to a different subsidiary company SNET America Inc. (SAI).
The SNET reorganization and DPUC Reorganization Decision represent significant developments in the telecommunications evolution from a highly regulated monopoly system to a less regulated competitive system.
The policy change in telecommunications law was appropriately enacted legislatively, Public Act 1994, No. 94-83 entitled "An Act Implementing The Recommendations of The Telecommunications Task Force." Public Act 94-83 became law on July 1, 1994. The policy is expressed in the Act, now codified as General Statutes § 16-247a.
Section 16-247a reads in pertinent part:
 (a) Due to the following: Affordable, high quality telecommunications services that meet the needs of individuals and businesses in the state are necessary and vital to the welfare and development of our society; the efficient provision of modern telecommunications services by multiple providers will promote economic development in the state; expanded employment opportunities for residents of the state in the provision of telecommunications services benefit the society and economy of the state; and advanced telecommunications services enhance the delivery of services by public and not-for-profit institutions, it is, therefore, the goal of the state to (1) ensure the universal availability and accessibility of high quality, affordable telecommunications services to all residents and businesses in the state, (2) promote the development of effective competition as a means of providing customers with the widest possible choice of services, (3) utilize forms of regulation CT Page 11710 commensurate with the level of competition in the relevant telecommunications service market, (4) facilitate the efficient development and deployment of an advanced telecommunications infrastructure, including open networks with maximum interoperability and interconnectivity, (5) encourage shared use of existing facilities and cooperative development of new facilities here legally possible, and technically and economically feasible, and (6) ensure that providers of telecommunications services in the state provide high quality customer service and high quality technical service. The department shall implement the provisions of this section, sections 16-1, 16-18a, 16-19, 16-19e, 16-22, 16-247b, 16-247c, 16-247e to 16-247i, inclusive, and 16-247k
and subsection (e) of section 16-331 in accordance with these goals.
In the concluding sentence of § 16-247a(a) the DPUC is expressly authorized to implement the articulated policy.
Prior to the enactment of Public Act 94-83, telecommunications policy was to authorize only a single or monopoly provider for any given market area. Regulation would impose universal minimum service obligations and tariffs would control the monopoly's pricing power. Public Act 94-83 mandated the replacement of the former system with a less regulated more competitive system.
The transformation of the Connecticut telephone system has required substantial DPUC supervision and implementation. Nonetheless, the mandated monopoly system has continued beyond July 1, 1994, and essentially remains in place. In most of the state, nearly all local telephone service is provided by the SNET subsidiary TELCO. In contrast, long distance telephone service has become a competitive market.
On November 1, 1994, the DPUC issued a decision in Docket No. 94-07-01, "The Vision For Connecticut Telecommunications Infrastructure." The activity included an additional sixteen proceedings specifically related to SNET.[1] In addition, as of the date of the decision, June 25, 1997, DPUC has also certified, pursuant to § 16-247g, some nineteen companies to offer retail local telecommunications services.[2]
CT Page 11711
The telecommunications industry is also the subject of federal legislation. The Telecommunications Act of 1996 (Pub.L. No. 104-104, 110 Stat. 56 (1996 Act 1996) codified at 47 U.S.C. § 151
et. seq.) evidences a federal telecommunications policy which also mandates more competition and less regulation. Both the state and federal law impose substantial obligations on TELCO as an incumbent local exchange carrier (ILEC) to share infrastructure facilities and wholesale services to competitive local exchange carriers (CLEC's).
TELCO, to avoid certain of these obligations,[3] is restructuring to end its retail offerings and have them assumed by a separate SNET subsidiary SAI. The DPUC restructure decision, which is appealed from, essentially allows TELCO to end its retail services and become a wholesaler of telecommunication services upon completion of a consumer election process. Consumers would elect or choose which CLEC would provide their retail local telephone service. SAI would receive TELCO assets necessary for the retail operation and compete under the SNET name in the election process. Once the process was completed, TELCO would cease its retail operation and SAI would be regulated only as a CLEC.
These administrative appeals are brought by the State of Connecticut Office of Consumer Counsel and MCI Telecommunications Corporation. The appellants claim that the DPUC restructure decision avoids a mandated reclassification procedure set forth in § 16-247f, violates public policy requiring regulation until an actual competitive market exists, and is inconsistent with an earlier DPUC alternate plan of regulation, DPUC Docket No. 95-03-01, dated March 13, 1991.
The defendant SNET challenges the plaintiffs' aggrievement. "Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) Med-Trans, Inc. v.Department of Public Health, 242 Conn. 152, 158 (1997); Bakelaarv. West Haven, 193 Conn. 59, 65 (1984). "It is fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." Connecticut Business IndustryAssn., Inc. v. Commission on Hospitals Health Care,214 Conn. 726, 729 (1990). "The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact." Mystic Marinelife Aquarium, Inc. v.Gill, 175 Conn. 483, 493 (1978). CT Page 11712
In its appeal, MCI alleges aggrievement asserting that as a result of the decision: "MCI will be deprived of its statutory rights . . . will have its ability to compete impeded, and will lose substantial income." (Complaint of MCI, p. 11, ¶ 39.)
In order to have standing to bring this administrative appeal, the plaintiffs must prove aggrievement. United CableTelevision Services Corp. v. Dept. of Public Utility Control, 23S Conn. 334, 342 (1995); Connecticut Business Industry Ass'n Inc.v. Commission on Hospitals Health Care, supra, 214 Conn. 729.
 The test for aggrievement long recognized by this court is set forth in our decision in State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 524 A.2d 636
(1987). There we stated that "[t]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47, 478 A.2d 601 (1984); Bakelaar v. West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1984). Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. O'Leary v. McGuinness, 140 Conn. 80, 83, 98 A.2d 660 (1953). Hall v. Planning Commission, 181 Conn. 442, 445, 435 A.2d 975 (1980)." (Internal quotation marks omitted.) Id., 299-300. "The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact." Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493, 400 A.2d 726 (1978).
United Cable Television Services Corp. v. Dept. of Public UtilityControl, supra, 235 Conn. 342-43.
"As a general rule, allegations that a governmental action will result in competition harmful to the complainant's business would not be sufficient to qualify the complainant as an aggrieved person." (Emphasis in original, internal quotation CT Page 11713 marks omitted.) United Cable Television Services Corp. v. Dept.of Public Utility Control, supra, 235 Conn. 343-44; see alsoState Medical Society v. Board of Examiners in Podiatry, supra,203 Conn. 301; Gregorio v. Zoning Board of Appeals,155 Conn. 422, 426 (1967). An exception to the general rule exists if the proposed competition is unfair or illegal. State Medical Societyv. Board of Examiners in Podiatry, supra, 302-03, United CableTelevision Services Corp. v. Dept. of Public Utility, supra, 344.
In United Cable, supra, and New England Cable TelevisionAssociation, Inc. v. Department of Public Utility Control,247 Conn. 95 (1998), competitor cable television operators were generally found not to be aggrieved concerning the granting of a competing franchise to a new cable television operator. Their aggrievement was limited to the level playing field analysis provided in § 16-331 (g). The competitors lacked aggrievement and were without standing to raise the public interests which were protected by § 16-331 (a) and (b).
This case presents a distinct scenario. The SAI certificate of public convenience and necessity (CPCN) was a separate DPUC docket, and thus not part of this case.[4] The underlying DPUC decision has allowed the SNET parent to restructure in a manner which ends the TELCO highly regulated, noncompetitive retail local telephone operations and replaces it with a competitive less regulated retail operation (SAI).
Section 16-247f(a) commands DPUC to "regulate the provision of telecommunications services in the state in a manner designed to foster competition and protect the public interest."
In United Cable and New England Cable, the plaintiffs were challenging the granting of a CPCN, or franchises under § 16-331 (b). The United Cable court concluded: "The plain language of the statute and its legislative history indicate that the public, as consumers of cable television, and not competing certificate holders, was the sole class intended to be protected by § 16-331 (b). The plaintiff cannot establish that its claimed injury is protected by § 16-331 (b) and, therefore, does not have standing to raise claimed violations of that statutory provision." United Cable Television ServicesCorp. v. Dept. of Public Utility Control, supra,235 Conn. 348-49.
There is substantial contrast between the primary focus of CT Page 11714 § 16-247 (f)(a) to "foster competition" and the intent of § 16-331(b) "to protect the cable consuming public at large from inefficient and ineffective cable service." United CableTelevision Services Corp. v. Dept. of Public Utility Control,supra, 235 Conn. 347.
The plaintiffs' claims of injury relate to the prospect of an unregulated, or less regulated, monopoly in local telephone service; whereby, the federal and state mandates for incumbent local exchange carriers would be voided by a transfer of the accounts to an affiliated subsidiary.
Section 16-247f constitutes an exception to the general rule that competitors are not aggrieved and lack standing to complain of competitive injury. Competition is in the public interest, but competitors of an incumbent monopoly are within the zone of interest and protection of § 16-247f.
The plaintiff MCI is similarly able to demonstrate aggrievement regarding the alternative regulation plan claims. The DPUC alternative Regulation Plan, Docket No. 95-03-01 imposes on TELCO notice, filing and pricing requirements. The purpose of these requirements is to nurture competition by regulating the existing monopoly provider.
The Office of Consumer Counsel's (OCC) standing and aggrievement arise from § 16-2a[5] which provides for broad representation of consumer interests relating to utility services. The interest established by § 16-2a(a) has been recognized judicially in Light Rigging Co. v. Dept. of PublicUtility Control, 219 Conn. 168, 173 (1991); Office of ConsumerCounsel v. Dept. of Public Utility Control, 234 Conn. 624, 636
(1995).
In its brief, SNET challenges the OCC's specific legal interests harmed by the restructure decision, and the OCC's request for remedy. (SNET Brief, p. 18.)
The possibility of lost price decreases and service to consumers are precisely the interests within the scope of OCC's authority and represent specific interests in non-monopoly, competitive local retail telephone service. The OCC requests a continuation of regulation of SNET and its affiliates (TELCO and SAI) until the statutory reclassification procedure has been followed. This is quite a different result from the Restructure CT Page 11715 Decision which avoids the statutory reclassification procedure; and, following the election process, substantially deregulates local retail telephone service. The OCC is aggrieved by the decision appealed from.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Departmentof Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . ." (Internal quotation marks omitted.)Connecticut Light Power Co. v. Dept. of Public Utility Control,219 Conn. 51, 57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St.Raphael v. Commission on Hospitals Health Care, 182 Conn. 314,318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The courts ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations omitted; internal quotation marks CT Page 11716 omitted.) Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service. Inc. v.Administrator, 209 Conn. 381, 385 (1988).
"Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Texas-Ohio Power. Inc.,243 Conn. 635, 642-43 (1998).
The primary issue in these consolidated appeals is whether the reclassification procedure of § 16-247f(c) is mandatory and prohibits the consequential change in classification accomplished by the restructure decision. This is a question of law not previously subject to judicial scrutiny and thus subject to a broader standard of review. The court finds this issue for the defendants DPUC and SNET.
 In matters of statutory interpretation, we are guided by well established principles, paramount among which is the principle that "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . (Citations omitted; CT Page 11717 internal quotation marks omitted.) State v. Spears, 234 Conn. 78, 86-87, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995).
Assn. of Not-for-Profit Providers for the Aging v. Dept. ofSocial Services, 244 Conn. 378, 391 (1998).
Section 16-247f(a) imposes a mandate that DPUC "shall regulate the provision of telecommunications services in the state in a manner designed to foster competition and protect the public interest." In contrast, § 16-247f(c) provides a process by which various services may be reclassified. In seizing the opportunity presented by the SNET proposed plan of reorganization, the DPUC has created a dramatically altered local telephone service environment. The incumbent TELCO remains a highly regulated wholesale provider to a score or more of competitive local exchange carriers. There is no indication in the legislative history or statutory language suggesting that such a creative approach is prohibited. To the contrary, a less regulated, more competitive environment is the goal of Public Act 94-83.[6]
The plaintiffs seek to avoid the implementation of a competitive environment by arguing for continued regulation and restrictions on the competition by any SNET affiliate. Sections16-247f(c) and (d) do not facilitate any competitive environment, they merely provide a means and standards for measuring when a business environment is deemed actually competitive.
The reclassification procedures of § 16-247f are important but less so than the imperative that the DPUC regulatory efforts "foster competition and protect the public interest."
The SNET proposed plan of reorganization presented a scenario not contemplated by the statutory reclassification scheme of § 16-247f. Here, the incumbent monopoly local retail service provider was going out of the retail telephone service business. Compelling TELCO to continue retail services or imposing asymmetrical regulations on SAI, as requested by the plaintiffs, is contrary to the spirit of Public Act 94-83 and the 1996 Federal Act.
The philosophy undergirding the DPUC decision is expressed at CT Page 11718 page 54: "The Department remains of the opinion that the General Assembly and Congress envisioned a very limited role for the regulatory community in the competitive marketplace of the future . . . The Department finds no reason at this time to question the confidence in a competitive marketplace expressed by the Connecticut General Assembly or the Congress." (Return of Record (ROR), Item XIV-1, Decision dated June 25, 1997, p. 54.)
The plaintiffs, in seeking to continue expansive regulation and asymmetrical rules, are fighting the clear legislative expressions of public policy in telecommunications. SAI as a CLEC under § 16-247c(c) and § 253 of the 1996 Federal Act should operate under the same rules as its competitors.
The plaintiffs misconstrue the restructure decision. TELCO will not be transferring customers to SAI. Under the decision, TELCO will continue to provide retail services until the ballot process is completed. SAI will compete with the plaintiff MCI and other CLECs for retail customers, who will no longer receive service from TELCO.
The continuing validity of the reclassification procedure is recognized by the DPUC in the restructure decision at page 65. TELCO's wholesale services (all of its remaining services) will be considered noncompetitive until the reclassification process of § 16-247f.
The plaintiffs' claims that the restructure decision contravenes the DPUC Alternate Regulation Plan are also resolved in favor of the defendants.
The Alternate Regulation Plan approved by DPUC in Docket No. 95-03-01 was authorized legislatively by § 16-247k.[7]
TELCO's retail service will end with completion of the ballot process, but its remaining services will continue, subject to the price cap formula of the Alternate Regulation Plan, as noncompetitive services. The continuation of the Alternative Regulation Plan for TELCO's wholesale services and facilitation of competitive less regulated retail service is not inconsistent with the goals of § 16-247k or Docket No. 95-03-01.
The plaintiff MCI[8] has also challenged the DPUC Restructure Decision in an action in United States District Court for the District of Connecticut.[9] In entering CT Page 11719 summary judgment for SNET and the DPUC, Judge Thompson on September 29, 1998, in a comprehensive and persuasive decision, rejected challenges under the Telecommunications Act of 1996 to the restructure decision. The court adopts Judge Thompson's reasoning and decision as to the similar challenges raised in this case. Judge Thompson agreed with the DPUC that SAI is not a successor or assign of TELCO and that TELCO was not obligated to continue to offer retail local service to end users.
The plaintiffs raise speculative challenges about the competitive environment which will exist after the ballot process. The DPUC restructure decision specifically addresses independent operations of the SNET affiliates, non-discrimination by TELCO among CLECs, marketing restrictions, as well as stringent cost and accounting responsibilities. The DPUC is entitled to a presumption that it acts within the scope of its authority. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 599
(1993), and in an unbiased manner, Pet v. Department of HealthServices, 228 Conn. 651, 677 (1994).
The DPUC modified SNET's proposal to facilitate a level playing field for the CLECs. The DPUC decision emphasizes the public benefit and the continuing goal of a competitive local telephone environment. The SAI, CPCN and franchise remain subject to its honoring the restructure decision orders. TELCO remains substantially regulated as the monopoly provider of noncompetitive wholesale telecommunication services.
The court finds no statutory prohibitions to the restructure decision, which is intended to implement telecommunications public policies of competitive, less regulated, high technology service.
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny