## DOMESTIC VIOLENCE SERVICES OF GREATER NEW HAVEN, INC. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (15407)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

Argued December 3, 1996—officially released February 4, 1997

*Victor R. Perpetua*, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellant (named defendant).

*Patricia E. Reilly*, for the appellee (plaintiff).

*Opinion*

BERDON, J. The sole issue in this certified appeal is whether the appeal of the named defendant, the freedom of information commission (FOIC), should have been dismissed by the Appellate Court on mootness grounds. The dispute in this administrative appeal arises out of a request for corporate documents by the defendant Ellen Andrews (complainant) from the plaintiff, Domestic Violence Services of Greater New Haven, Inc. The plaintiff denied the complainant's request for the documents on the ground that it was not a public agency within the provisions of General Statutes § 1-18a[1] of the Freedom of Information Act

---

[1] General Statutes § 1-18a provides in pertinent part: "Definitions. As used in this chapter, the following words and phrases shall have the following meanings . . . .

"(a) 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office,

(FOIA). Although the documents were voluntarily furnished to the complainant, the FOIC nonetheless proceeded with a contested hearing to determine whether the plaintiff was a public agency.[2] After deciding that the plaintiff was a public agency, the FOIC then found that the plaintiff's voluntary disclosure had been untimely and ordered the plaintiff, in the future, to comply promptly with other disclosure requests. The plaintiff appealed to the Superior Court, which sustained the plaintiff's appeal. The FOIC then appealed the reversal of its decision to the Appellate Court, which, sua sponte, raised the issue of whether the FOIC was seeking an advisory opinion because the issue was moot. After a hearing, the Appellate Court dismissed

official or body or committee thereof but only in respect to its or their administrative functions. . . ."

[2] The FOIC, in order to make its determination, and the trial court upon review of the FOIC's decision, relied on *Connecticut Humane Society* v. *Freedom of Information Commission*, 218 Conn. 757, 591 A.2d 395 (1991). "[W]here it is unclear whether a hybrid public/private entity falls within the definition set forth in § 1-18a (a), we have interpreted the section to include within its scope an entity that is the functional equivalent of a public agency. *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 554–55, 436 A.2d 266 (1980). In determining whether an entity is the functional equivalent of a public agency, we consider the following criteria: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government. Id., 554; see also *Hallas* v. *Freedom of Information Commission*, 18 Conn. App. 291, 294, 557 A.2d 568 (1989)." (Internal quotation marks omitted.) *Connecticut Humane Society* v. *Freedom of Information Commission*, supra, 759–60.

"In light of the myriad of organizational arrangements that may be confronted, under the functional equivalency approach, each new arrangement must be examined anew and in its own context. . . . A case by case application of the factors noted above is best suited to ensure that the general rule of disclosure underlying this state's FOIA is not undermined by nominal appellations which obscure functional realities. . . . All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive." (Citations omitted; internal quotation marks omitted.) Id., 760–61.

Whether the trial court correctly concluded that the plaintiff is not the functional equivalent of a public agency is an issue to be decided by the Appellate Court on remand.

the defendant's appeal. We granted the FOIC's petition for certification to appeal from the Appellate Court.[3] We now reverse.

The undisputed facts are as follows. On December 10, 1993, the complainant made a written request to the plaintiff for certain corporate documents, including its annual report, budget and bylaws. On December 15, 1993, the plaintiff's executive director refused to provide the complainant with the requested documents. On December 20, 1993, the complainant filed a complaint with the FOIC that requested it to order the disclosure. The FOIC sent a notice to the parties scheduling a hearing to be conducted on March 3, 1994. On February 28, 1994, the plaintiff voluntarily delivered the requested documents to the complainant. In a cover letter, the plaintiff's attorney stated that "this disclosure is not an admission that [the plaintiff] is a public agency, as that term is used in the [FOIA]. Rather, we freely disclose the documents requested in the hopes of avoiding a costly legal battle over this matter."

Notwithstanding the voluntary disclosure, the FOIC proceeded with a contested hearing on March 31, 1994.[4] After the hearing, it determined that the plaintiff was a public agency pursuant to the FOIA and that, although the documents had been furnished to the complainant prior to the hearing, the documents had not been provided *promptly*.[5] The FOIC ordered the plaintiff to com-

---

[3] We granted certification limited to the following question: "Under the circumstances of this case, did the Appellate Court properly dismiss the defendant's appeal as either moot or as an attempt to secure an advisory opinion?" *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 237 Conn. 901, 674 A.2d 1329 (1996).

[4] Subsequent to the voluntary disclosure, the FOIC rescheduled the contested hearing from March 3 to March 31, 1994.

[5] General Statutes § 1-15 provides in pertinent part: "Copies of public records, fees. (a) Any person applying in writing shall receive, *promptly upon request*, a plain or certified copy of any public record. The fee for any copy provided in accordance with this section and sections 1-18a, 1-19, 1-19b, 1-21 to 1-21i, inclusive, 1-21*l* and 1-21k (1) by an executive, administrative or

ply strictly with the provisions of the FOIA in the future. The plaintiff appealed from the decision of the FOIC to the Superior Court pursuant to General Statutes §§ 1-21i (d)[6] and 4-183[7] on the ground that the FOIC had improperly found that the plaintiff was a public agency.

legislative office of the state, a state agency or a department, institution, bureau, board, commission, authority or official of the state, including a committee of, or created by, such an office, agency, department, institution, bureau, board, commission, authority or official, and also including any judicial office, official or body or committee thereof but only in respect to its or their administrative functions, shall not exceed twenty-five cents per page, and (2) by all other public agencies, as defined in section 1-18a, shall not exceed fifty cents per page. If any copy provided in accordance with said sections requires a transcription, or if any person applies for a transcription of a public record, the fee for such transcription shall not exceed the cost thereof to the public agency. . . ." (Emphasis added.)

General Statutes § 1-19 provides in pertinent part: "Access to public records. Exempt records. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to *inspect such records promptly* during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings. . . ." (Emphasis added.)

[6] General Statutes § 1-21i (d) provides in pertinent part: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. . . ."

[7] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

The Superior Court found that the plaintiff was not a public agency and, therefore, reversed the decision of the FOIC. Thereafter, the FOIC, pursuant to § 1-21i (d),[8] appealed the reversal of its decision to the Appellate Court, which dismissed the appeal.

The plaintiff argues that the Appellate Court properly dismissed the FOIC's appeal as an attempt to secure an advisory opinion because the documents had already been turned over to the complainant and, therefore, no practical relief could be granted on appeal. We disagree.

The decision of the Appellate Court to dismiss this appeal as seeking an advisory opinion is predicated on mootness. "Since mootness implicates subject matter jurisdiction; *Sadlowski* v. *Manchester*, 206 Conn. 579, 583, 538 A.2d 1052 (1988); it can be raised at any stage of the proceedings. See *Sobocinski* v. *Freedom of Information Commission*, 213 Conn. 126, 134–35, 566 A.2d 703 (1989). We have consistently held that we do not render advisory opinions. If there is no longer an actual controversy in which we can afford practical relief to the parties, we must dismiss the appeal. *Sadlowski* v. *Manchester*, [supra, 583]." (Internal quotation marks omitted.) *Board of Education* v. *New Haven*, 221 Conn. 214, 216, 602 A.2d 1018 (1992). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to

---

[8] General Statutes § 1-21i (d) provides in pertinent part: "The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. . . ."

obtain judicial opinions on points of law. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal. . . . *Hallas* v. *Windsor*, 212 Conn. 338, 347, 562 A.2d 499 (1989). A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 439 n.3, 685 A.2d 670 (1996).

General Statutes §§ 1-15 and 1-19 (a) both provide in pertinent part that requested public records must be provided promptly. Section 1-19 (a) provides that "all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to *inspect such records promptly* during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . ." (Emphasis added.) Section 1-15 (a), the provision that is applicable to the complainant's request, provides that "[a]ny person applying in writing shall receive, *promptly upon request*, a plain or certified copy of any public record. . . ." (Emphasis added.) General Statutes § 1-21i (b) (1) provides in pertinent part that "[a]ny person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15 [or] . . . 1-19 . . . may appeal therefrom to the [FOIC] by filing a notice of appeal with said commission. . . ."

Because the complainant, at the hearing, claimed that the documents were not provided to her within a "reasonable time," and the evidence supported her claim, the FOIC found that the plaintiff "violated §§ 1-15 and 1-19 (a) . . . when it failed to promptly provide the complainant with a copy of the [requested] records . . . ."[9] Indeed, the documents were not provided to

---

[9] The plaintiff argues that the complainant did not address the promptness issue in her FOIC complaint and, therefore, she should have amended her

the complainant until almost three months after her initial request and only three days before the scheduled FOIC hearing. Accordingly, the plaintiff was found to have violated the FOIA by failing to make available the requested documents in a prompt manner.

Furthermore, the order issued by the FOIC was prospective in nature and impacts the obligations of the plaintiff in the future with respect to disclosure requests from members of the public. The FOIC's order in this case stated: "Henceforth, [the plaintiff] shall strictly comply with the provisions of the FOIA." Regarding this type of order, *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 649 n.9, 631 A.2d 252 (1993), is instructive. *Gifford* involved the issue of whether a chief of police had to provide a copy of an arrest report to a newspaper reporter pursuant to the FOIA. This court noted that "[t]he commission concluded in its final decision . . . that, during the pendency of a criminal prosecution, an arrest report must be disclosed upon request to the public pursuant to General Statutes §§ 1-15 and 1-19 (a) of the act. The commission stated that, except for the names and addresses of witnesses, such arrest reports were not

FOIC complaint to reflect that the requested documents had been provided to her and that she was proceeding on the basis that the documents had not been provided promptly. We disagree. The plaintiff fails to acknowledge that this situation was caused as a result of its failure to turn over the requested documents until the FOIC hearing was imminent. Furthermore, "[a]s a practical matter, the FOIA is used repeatedly by members of the public who are unschooled in technical, legalistic language distinctions. It would be unreasonable to deny a member of the public access to the FOIA simply because of arguable imperfections in the form in which a request for public records is couched." *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 167, 635 A.2d 783 (1993). Likewise, this reasoning applies to the complaint submitted to the FOIC.

Nevertheless, the complainant in this case submitted a written statement at the FOIC hearing that indicated that her "request [for documents] was not [ful]filled within a reasonable time . . . ." In addition, the complainant made an opening statement at the hearing wherein she stated that her "request was not fulfilled within a reasonable time as required [under the FOIA] . . . ."

exempt from disclosure and ordered [the Windsor Locks chief of police] to 'comply with the disclosure requirements of § 1-19 (a).' The commission also 'caution[ed] [the chief of police] to take care to comply with the law in the future or [he] may risk further consequences for [his] continuing disregard of the law.' " Id., 648–49. In *Gifford,* even though the requested document was released to the public before the FOIC's final decision was released, we agreed with the trial court's conclusion that the appeal was not moot. We stated that "[t]he order issued by the commission is prospective in nature and impacts the discovery obligations of the state's attorneys in pending criminal matters." Id., 649 n.9; see *Glastonbury Education Assn.* v. *Freedom of Information Commission,* 234 Conn. 704, 707 n.3, 663 A.2d 349 (1995) ("[e]ven though the proceedings at issue here long since have concluded, and hence there is nothing to which a remand could be directed, the appeal is not moot because of the continuing order to the plaintiffs to conduct future negotiations in accordance with the FOIC order under challenge in this appeal"); see also *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 650, 556 A.2d 1020 (1989) (board members risk criminal sanctions because noncompliance with FOIC order is class B misdemeanor). The present appeal presents the same prospective order. For this reason, and because the FOIC determined that the plaintiff had not provided the documents promptly, the controversy before the FOIC was not moot. Consequently, the appeal before the Appellate Court was not moot.[10]

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings according to law.

In this opinion the other justices concurred.

---

[10] We note that neither the record nor the briefs to this court reveal a change in circumstances *subsequent* to the FOIC's decision that indicates that the controversy has become moot during the appellate process.