[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF APPEAL
Docket No. 170332 (Gateway I); Docket No. 176155 (Gateway II)
In two of these consolidated cases,[1] the plaintiff, Gateway Park Associates, LLC (Gateway) appeals from two decisions of the defendant planning and zoning commission of the town of Greenwich (Commission), involving the site plan and special permit applications of the defendants, Pemberwick Apartments, LLC (Pemberwick) and Smith-Groh, Inc. (Smith-Groh).[2]
Docket No. 176008 (Smith-Groh)
In this case, the plaintiffs, Smith-Groh, Inc. (Smith-Groh) and Pemberwick Apartments, LLC (Pemberwick),[3] appeal from a decision of the defendant planning and zoning commission of the town of Greenwich (Commission), denying the plaintiffs' final site plan and special permit application.[4]
 II. BACKGROUND
CT Page 13773
Docket No. 170332 (Gateway I)
By application (#1355.1C) dated August, 1998, Pemberwick applied to the Commission for site plan approval on a property (the premises) which had previously received final site plan, special permit and zone change approval in 1989. (Gateway I, Return of Record [ROR], Items 4-6.) Pemberwick sought to construct a twenty-seven unit apartment building on the premises, similar to the proposed construction previously approved by the Commission in the 1989.[5] (Gateway I, ROR, Items 4-6.) In the application, Pemberwick included a copy of the Commission's decision letter granting the 1989 approvals. (Gateway I, ROR, Items 4, 6.) Furthermore, the application described the premises as being located in the R-PHD-SU zone, as did the Commission's 1989 decision letter approving the R-PHD-SU zoning designation. (Gateway I, ROR, Items 5, 6.) Additionally, on November 10, 1998, Pemberwick requested a special permit for construction from the Commission. (Gateway I, ROR, Item 35.) Thereafter, on November 17, 1998, Pemberwick requested that the Commission treat the application for site plan approval as an application for preliminary site plan approval, rather than as an application for final site plan approval (Gateway I, ROR, Item 40.)
Public hearings on the application were held by the Commission on November 17, 1998, December 8, 1998, and January 7, 1999. (Gateway I, ROR, Items 41, 57, 72.) On January 7, 1999, the Commission resolved that the application for construction of the twenty-seven unit apartment building on the premises "in the R-PHD-SU zone" was "granted a move to final site plan with modifications. No action on the special permit was taken at this time." (Emphasis added.) (Gateway I, ROR, Item 73.) The Commission's decision letter dated January 20, 1999, similarly refers to the premises as within the R-PHD-SU zone and advises Pemberwick to proceed to final submission, with twenty requested modifications. (GatewayI, ROR, Item 75.) Thereafter, during a regular meeting held on January 26, 1999, the Commission denied Pemberwick's related request for a special permit, "without prejudice on an administrative basis for expiration of time." (Gateway I, ROR, Item 79.) On February 5, 1999, Gateway filed its first appeal, hereinafter referred to as Gateway I, alleging, inter alia, that: the Commission's decision recognizing the continued designation of the premises in the R-PHD-SU zone is illegal, arbitrary and unreasonable because, pursuant to section 6-74 of the zoning regulations, the R-PHD-SU zone designation approved by the Commission in 1989 terminated when its site plan expired for failure to commence construction on the premises within the three year time limitation of section 6-14.1 of the zoning regulations; and the Commission erred in granting the preliminary site plan approval. (GatewayI Second Amended Appeal, ¶ 14-16.) CT Page 13774
In March of 1999, Pemberwick applied to the Commission for final site plan approval. On June 3, 1999, however, Pemberwick withdrew the final site plan application. On June 15, 1999, the Commission moved to dismiss the Gateway I appeal on the ground that this court lacked subject matter jurisdiction, arguing that the appeal was moot because Pemberwick withdrew the March, 1999 application for final site plan approval. (Gateway I, file, #111, 114, 116.) On July 19, 1999, the Commission's motion to dismiss was denied by the court, Karazin, J. On September 3, 1999, Smith-Groh became the record owner of the subject premises and on April 17, 2000, Gateway cited in Smith-Groh as a party defendant inGateway I. Accordingly, the focus of the appeal in Gateway I involves the Commission's decision granting preliminary site plan approval to Pemberwick and/or Smith-Groh.
Docket No. 176155 (Gateway II)
While Gateway I was pending, on August 12, 1999, Pemberwick submitted another application (#1355.3) for final site plan approval and a special permit to construct a twenty-seven unit apartment building on the premises. (Gateway II, Return of Record [ROR], Items 4, 4a-4l.) On September 3, 1999, however, Smith-Groh became the record owner of the subject premises. A public hearing on this application was held by the Commission on October 26, 1999. (Gateway II, ROR, Item 46.) The Commission's decision letter dated December 20, 1999, as revised on December 22, 1999, denies the application and describes the location of the subject premises as within the R-PHD-SU zone. (Gateway II, ROR, Item 68.) On January 14, 2000, Gateway filed its second appeal, hereinafter referred to as Gateway II, naming Pemberwick, Smith-Groh and the Commission as defendants, alleging, inter alia, that the Commission's decision recognizing the continued designation of the premises in the R-PHD-SU zone is illegal, arbitrary and unreasonable because, pursuant to section 6-74 of the zoning regulations, the R-PHD-SU zone designation approved by the Commission in 1989 terminated when its site plan expired for failure to commence construction on the subject premises within the three year time limitation of section 6-14.1 of the zoning regulations. (Gateway II, Appeal, ¶¶ 13(a) — (c).)
This court notes that these consolidated cases share two returns of record.[6] Furthermore, this court notes that the return of record forGateway II has been supplemented by the entire return of record forGateway I.[7] Consequently, any document originally placed in GatewayI's return of record may be cited or referred to by this court in connection with Gateway II.
Docket No. 176008 (Smith-Groh)
CT Page 13775
As indicated above, in this court's discussion of the background details of Gateway I, Pemberwick applied to the Commission for site plan approval to construct a twenty-seven unit apartment building on a parcel of property (the premises) located in Greenwich, by application (#1355.1C) dated August, 1998. (Gateway I,[8] ROR, Items 4-6.) Previously, in 1989, the Commission granted final site plan and special permit approvals involving the premises, and also approved a change in the zoning of the premises from an R-6 to an R-PHD-SU zone. (Gateway I, ROR, Items 4-6.) According to Pemberwick's application, Pemberwick sought to construct a twenty-seven unit apartment building on the premises, similar to the proposed construction previously approved by the Commission in 1989.[9] (Gateway I, ROR, Items 4-6.) Additionally, on November 10, 1998, Pemberwick requested a special permit for construction from the Commission. (Gateway I, ROR, Item 35.) Public hearings on Pemberwick's application were held by the Commission on November 17, 1998, December 8, 1998, and January 7, 1999. (Gateway I, ROR, Items 41, 57, 72.) The Commission's decision letter dated January 20, 1999, preliminarily
approved the site plan and advised Pemberwick to proceed to final submission with twenty requested modifications.[10] (Smith-Groh, ROR, Item 1.) Thereafter, during a regular meeting held on January 26, 1999, the Commission denied Pemberwick's related request for a special permit, "without prejudice on an administrative basis for expiration of time." (Gateway I, ROR, Item 79.)
As indicated above, in this court's discussion of the background details of Gateway II, Pemberwick submitted another application (#1355.3), on August 12, 1999, seeking final site plan approval and a special permit to construct a twenty-seven unit apartment building on the premises. Smith Groh, Return of Record [ROR], Items 4, 4a-4l.) While Pemberwick actually filed this application, Smith-Groh has been the record owner of the premises since September 3, 1999. (Smith-Groh, Exh. 1, warranty deed.) A public hearing on this application was held by the Commission on October 26, 1999. Smith-Groh, ROR, Item 46.) On December 8, 1999, the Commission unanimously voted to deny the application. (Smith-Groh, ROR, Item 66, pp. 44-46.) The Commission's decision letter dated December 20, 1999, revised December 22, 1999, denies the final site plan and special permit application[11] for the reasons that (1) the dwelling unit sizes proposed for the building were too large and thus failed to comply with Greenwich's zoning regulations pertaining to R-PHD-SU zones, and (2) the overall size of the building was too large.[12] (Smith-Groh, ROR, Item 68.) On January 6, 2000, Smith-Groh and Pemberwick filed this appeal, hereinafter referred to as Smith-Groh, alleging that the Commission, in denying the final site plan and special permit applications, acted illegally, arbitrarily and in abuse of its discretion in that: the application conformed to the zoning regulations; CT Page 13776 (Smith-Groh Appeal, ¶ 13(f)); the reasons assigned by the Commission for denying the application are not supported by the record; (Smith-Groh
Appeal, ¶¶ 13(a) — (c), (e), (g), (h)); the denial of the application was based on an incorrect conclusion of the permitted size of the apartment units allowed under the zoning regulations, and was inconsistent with both the site plan approval granted by the Commission in 1989 and the preliminary site plan approval granted in January of 1999. (Smith-Groh Appeal, ¶ 13(d)).
On May 30, 2000, the court ordered that Gateway Park Associates, LLC (Gateway), the owner of land that abuts the subject premises, be added as a party defendant in this case in accordance with a stipulated agreement of the parties.[13] Subsequently, Smith-Groh and Pemberwick moved to consolidate this case for trial with two other related cases,[14] and the motions were granted by the court in October of 2000.
 III. JURISDICTION
General Statutes § 8-8 governs appeals taken from a planning and zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Testa v. Waterbury, 55 Conn. App. 264, 268, 738 A.2d 740 (1999).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). "In the case of a decision by a zoning commission . . . `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1).
Docket No. 170332 (Gateway I); Docket No. 176155 (Gateway II)
Gateway alleges that it owns land that directly abuts the subject premises. (Gateway I Second Amended Appeal, ¶ 13; Gateway II Appeal, ¶ 12.) At a hearing held by this court on May 25, 2001, Gateway was found to be an aggrieved person pursuant to General Statutes § 8-8
(a)(1), in that it is the owner of land that abuts the subject premises involved in the site plan and special permit applications.
Docket No. 176008 (Smith-Groh)
Smith-Groh and Pemberwick allege that Smith-Groh, as the owner of the CT Page 13777 subject property, and Pemberwick, as the contract purchaser and applicant to the Commission, are aggrieved by the Commission's denial of the application. (Smith-Groh Appeal, ¶ 12.) At a hearing held by this court on May 25, 2001, Smith-Groh was found to be an aggrieved person pursuant to General Statutes § 8-8 (a)(1), in that it is the owner of the land involved in the site plan and special permit applications.[15]
As to Pemberwick's aggrievement, a Pemberwick representative testified that Pemberwick has a contract to develop or co-develop the subject premises with Smith-Groh. The Commission and Gateway objected to Pemberwick's status as aggrieved on the ground that Pemberwick failed to provide the court or the parties with any documentary evidence to demonstrate Pemberwick's interest in the subject premises. Consequently, at the hearing, this court reserved judgment as to Pemberwick's aggrievement and provided the parties with an opportunity to file supplemental memoranda on the issue.
This court notes that "[t]wo broad yet distinct categories of aggrievement exist, classical and statutory." Lewis v. Planning ZoningCommission, 62 Conn. App. 284, 288, ___ A.2d ___ (2001). Smith-Groh and Pemberwick do not argue that Pemberwick is aggrieved within the meaning of General Statutes § 8-8 (a)(1). Rather, they argue, in essence, that Pemberwick is classically aggrieved.
The Connecticut Supreme Court recently explained that classical aggrievement "is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . We traditionally have applied the following two part test to determine whether [classical] aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) Gladysz v. Planning ZoningCommission, 256 Conn. 249, 255-56, ___ A.2d ___ (2001). "Because aggrievement is a jurisdictional question, and therefore, the key to access to judicial review, the standard for aggrievement is rather strict." (Internal quotation marks omitted.) Id., 257. The burden of proving aggrievement is on the plaintiff Mystic Marinelife Aquarium, Inc.v. Gill, 175 Conn. 483, 493, 400 A.2d 726 (1978). The determination of aggrievement presents a question of fact for the trial court. McNally v.Zoning Commission, 225 Conn. 1, 7, 621 A.2d 279 (1993).
In their supplemental memorandum, Smith-Groh and Pemberwick argue that Pemberwick satisfies the two part test for classical aggrievement because: (1) Pemberwick was the applicant for the preliminary and the final site plan approvals; (2) Smith-Groh is a fifty percent partner in Pemberwick; (3) Pemberwick is the developer of the subject premises; and CT Page 13778 (4) pursuant to a contract or agreement between Pemberwick and Smith-Groh, Pemberwick acts as Smith-Groh's representative and has incurred large sums of money in pursuing the applications and related development expenses, despite legal title to the premises remaining with Smith-Groh. Smith-Groh and Pemberwick conclude that these assertions demonstrate the possibility that Pemberwick's interest has been adversely affected by the Commission's decision and therefore, Pemberwick should be found to be aggrieved.
This court finds, however, that Smith-Groh and Pemberwick have not satisfactorily demonstrated aggrievement as to Pemberwick. Pemberwick claims to have a specific, personal and legal interest in the development of the subject premises and, as noted above, at a hearing held by this court, a Pemberwick representative testified that Pemberwick has a contract to develop or co-develop the subject premises with Smith-Groh. Pemberwick has not, however, provided this court with any kind of written contract or other documentation to demonstrate its interest in the premises. Instead, Pemberwick relies only upon a vague reference to a contract it purportedly has with Smith-Groh to develop the subject premises. Other than the evidence in the record which indicates that Pemberwick was the applicant to the Commission, this court has no competent evidence from which it can determine the nature of Pemberwick's interest, if any, in the subject premises. Although the interest I which supports a finding of aggrievement need not necessarily be confined to an ownership interest in real property; see Mystic Marinelife Aquarium,Inc. v. Gill, supra, 175 Conn. 493; the determination of aggrievement presents a question of fact for the trial court, and this court finds Pemberwick's interest in the subject matter of the Commission's decision to be unspecific and vague. See generally, Gladysz v. Planning ZoningCommission, supra, 256 Conn. 255-59 (discussing distinction between aggrievement and standing to apply to a planning and zoning commission). Consequently, this court finds that Pemberwick has not evidenced the first prong of the test for aggrievement, namely, "a specific, personal and legal interest in the subject matter of [the] decision." (Emphasis added.) Id., 255.
Furthermore, this court finds that Pemberwick also fails the second prong of the test for aggrievement which prescribes that the requisite interest in the subject matter of the decision must be shown to be specially and injuriously affected by the decision. As Pemberwick has failed to show that it has the requisite interest in the subject matter of the Commission's decision, any loss incurred by Pemberwick, financial or otherwise, similarly lacks a demonstrated nexus to the decision. SeeFareri v. Greenwich Inland-Wetlands, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 15118 (October 21, 1997,D'Andrea, J.) (20 Conn. L. Rptr. 434) (construction contractor who CT Page 13779 applied to Inland Wetland and Watercourses Agency held not to be aggrieved, despite financial interest in outcome of wetlands permit). The issue of aggrievement, in the absence of supporting evidence, must be found against Pemberwick. See Mystic Marinelife Aquarium, Inc. v. Gill,
supra, 175 Conn. 498. Accordingly, this court finds that Pemberwick has failed to prove aggrievement. Notwithstanding this court's finding as to Pemberwick, this court has jurisdiction over the subject matter of this appeal (Smith-Groh) and may decide the merits of the case, since Smith-Groh's aggrievement has already been established. See ProtectHamden/North Haven v. Planning Zoning Commission, 220 Conn. 527, 529
n. 3, 600 A.2d 757 (1991) (only one plaintiff-appellant must prove aggrievement in order for court to decide merits of case).
Timeliness and Service of Process
An appeal shall be commenced by service of process within fifteen days from the date that the commission's notice of decision is published. See General Statutes § 8-8 (b), as amended by Public Act No. 01-47. Further, it shall be commenced by leaving the process with, or at the abode of the clerk or chairman of the commission, and with the clerk of the municipality. See General Statutes § 8-8 (f), as amended by Public Act No. 01-47. Finally, although service of process shall also be made upon each person who petitioned or applied to the commission, failure to make such service within fifteen days on parties other than the commission shall not render the appeal untimely or deprive the court of jurisdiction over the appeal. See General Statutes § 8-8 (g), as amended by Public Act No. 01-47.
Docket No. 170332 (Gateway I)
The record in Gateway I does not contain an affidavit of publication reporting publication of the Commission's notice of decision. The record does, however, contain a "proof of publication" of the Commission's notice of its decision granting preliminary approval to the application (number 1355.1C), filed with the town clerk on January 12, 1999, to be published in the Greenwich Time newspaper on January 14, 1999.[16]
(Gateway I, ROR, Item 73.) Additionally, Gateway filed a copy of the notice of the Commission's preliminary approval as it appeared in theGreenwich Time newspaper on January 14, 1999. (Gateway I Appeal, Exhibit D.) Gateway's appeal in Gateway I was commenced by service of process upon the Commission's chairperson and the town clerk on January 28, 1999, and upon the agent authorized to accept service of process for Pemberwick on January 29, 1999. On April 17, 2000, Gateway's motion to cite in Smith-Groh as a party defendant in Gateway I was granted by the court,Ryan, J., and on May 3, 2000, service of process was made upon Smith-Groh, by serving the process to Smith-Groh's treasurer. This CT Page 13780 court, therefore, finds that Gateway's appeal in Gateway I was commenced in a timely manner by service of process upon the appropriate parties.
Docket No. 176155 (Gateway II)
As to the Gateway II appeal, an affidavit of publication dated January 2, 2000, reports that the Commission's notice of decision was published in the Greenwich Time newspaper on December 15, 1999. (Gateway II, ROR, Item 64.) On December 29, 1999, Gateway's appeal in Gateway II was commenced by service of process upon the Commission's chairperson, the town clerk, and upon Smith-Groh, by serving the process to Smith-Groh's president. On January 7, 2000, process was served upon the agent authorized to accept service of process for Pemberwick. Accordingly, this court finds that the Gateway II appeal was timely commenced by service of process upon the proper parties.
Docket No. 176008 (Smith-Groh)
An affidavit of publication dated January 2, 2000, reports that the Commission's notice of decision was published in the Greenwich Time
newspaper on December 15, 1999. (Smith-Groh, ROR, Item 64.) On December 27, 1999, Smith-Groh's appeal was commenced by service of process upon the Commission's chairperson and the town clerk. Accordingly, this court finds that the Smith-Groh appeal was timely commenced by service of process upon the proper parties.
 IV. SCOPE OF REVIEW
In ailing upon a site plan and special permit application "a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court . . . decides whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . ." (Brackets in original; citations omitted; internal quotation marks omitted.) Irwin v. Planning Zoning Commission,244 Conn. 619, 627-28, 711 A.2d 675 (1998).
"In applying the law to the facts of a particular case, the board is endowed with a liberal discretion and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Id., 628. When "the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably CT Page 13781 supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." Id., 629. Concerning factual questions "a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) Id.
 V. DISCUSSION
As a preliminary matter, this court will address "whether subsequent events have so overtaken this litigation that the [Gateway I] appeal has become moot." Gagnon v. Planning Commission, 222 Conn. 294, 297,608 A.2d 1181 (1992). "A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists."Domestic Violence Sevices v. FOIC, 240 Conn. 1, 7, 688 A.2d 314 (1997). Mootness implicates the subject matter jurisdiction of the court. Gagnonv. Planning Commission, supra, 222 Conn. 297. The issue of subject matter jurisdiction can be raised at any time. Id. Moreover, the court may raise of the issue of mootness sua sponte. Lucarelli v. Freedom of InformationCommission, 29 Conn. App. 547, 548 n. 2, 616 A.2d 816 (1992), cert. denied, 225 Conn. 901, 621 A.2d 284 (1993); accord Schallenkamp v.DelPonte, 29 Conn. App. 576, 579, 616 A.2d 1157 (1992), aff'd,229 Conn. 31, 639 A.2d 1018 (1994). This court is mindful that the application involved in Gateway II
and Smith-Groh is directed towards the same subject matter and property as the application involved in Gateway I. Moreover, for the reasons that follow, if this court determines that the Commission's final decision denying the application at issue in GatewayII and Smith-Groh is sustainable on the record, then Gateway's appeal from the Commission's preliminary approval of the application at issue inGateway I will be rendered moot.
This court notes that in Gagnon v. Planning Commission, supra,222 Conn. 294, the Connecticut Supreme Court held that an administrative appeal had been rendered moot due to subsequent action by a planning commission. The plaintiff in Gagnon appealed from a planning commission's approval of an application for a subdivision. During the pendency of the appeal, the planning commission granted the applicant's request for a resubdivision of the same parcel. There was no appeal from the planning commission's action on the later resubdivision application. The issue presented was whether the action before the Gagnon court was rendered moot and, therefore, was subject to dismissal because of the planning commission's subsequent approval of the resubdivision application. The CT Page 13782 court concluded that "the unchallenged, subsequent approval of the resubdivision of the same parcel render[ed] the issues in the present action moot," and therefore, affirmed the judgment sustaining the trial court's dismissal of the appeal. Id., 295. See also Baumer v. ZoningCommission, 45 Conn. App. 653, 656, 697 A.2d 704 (1997) (regarding rule of Gagnon as controlling precedent in holding an appeal involving site plan approval moot due to commission's subsequent, unchallenged approval of revised site plan application). The Gagnon court explained that the potential burdens to the plaintiff stemming from the original subdivision approval no longer presented a justiciable issue, stating: "[i]t is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of . . . courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." Gagnon v. Planning Commission, supra, 222 Conn. 299. Thus, in Gagnon, a commission's subsequent approval of an application rendered moot an appeal from a previous, related application.
Similarly, in this case, the Commission's subsequent denial of an application (Gateway II and Smith-Groh) may potentially render moot Gateway's appeal from a previous, related application (Gateway I). In this case, however, Gateway has filed an appeal from the Commission's final decision denying the subsequent application (Gateway II). Nonetheless, if Gateway and Smith-Groh are unsuccessful in challenging the Commission's actions in the Gateway II and Smith-Groh appeals, then the appeal in Gateway I would be comparable to the appeal involved in theGagnon case and, therefore, would similarly warrant dismissal as a moot case. In other words, if the Commission's final, de novo decision[17]
denying the subsequent application is found to be sustainable on the record in Gateway II and Smith-Groh, any harm to Gateway stemming from the Commission's preliminary approval of the earlier application involved in Gateway I would no longer present a justiciable issue. See Jenkins v.Planning and Zoning Commission, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 162595, 170006 (February 1, 2001, Mintz, J.) (court dismissed one of two consolidated appeals as moot where underlying applications to planning commission involved same subject matter and property and planning commission's decision regarding latter application found sustainable and supported by record). Consequently, this court must determine whether the Commission's final decision denying the application involved in Gateway II and Smith-Groh
renders Gateway's appeal in Gateway I moot. Accordingly, this court will address the Gateway II and Smith-Groh appeals before it addresses theGateway I appeal.
Docket No. 176155 (Gateway II)
CT Page 13783
The Commission's decision letter denying the final site plan application refers to the premises as being located within the R-PHD-SU zone, and explains that in 1989, the "Commission re-zoned the site from R-6 to R-PHD-SU zoning. . . ." (Gateway II ROR, Item 68.) Gateway argues that the R-PHD-SU zone designation from 1989 has expired because the R-PHD-SU zone is a "floating zone" which cannot continue without its qualifying project. Gateway contends that the R-PHD-SU zone designation necessarily terminated because, pursuant to Greenwich's zoning regulations, the site plan that had been approved for the R-PHD-SU zone in 1989 has subsequently expired. Gateway concludes, therefore, that the zoning of the subject premises has reverted to its pre-1989 zoning designation, that of an R-6 zone. In response, Smith-Groh, Pemberwick and the Commission argue that the R-PHD-SU zone designation has not expired and remains valid. Smith-Groh and Pemberwick argue that the subject premises is not in a floating zone at all, and, furthermore, that there is no authority to support the proposition that the R-PHD-SU zone designation automatically expired or reverted to its prior designation, merely because the parcel of land was not put to a particular use within a prescribed time limit. The Commission argues that Gateway's appeal is rendered moot because the Commission ultimately denied the application, thereby eliminating any current controversy between the parties.
First, this court will address the Commission's argument that this (Gateway II) appeal is moot. As stated above, a case becomes moot when, due to intervening circumstances, a controversy between the parties no longer exists. Domestic Violence Sevices v. FOIC, supra, 240 Conn. 7. In this case, a controversy between the parties still exists, despite the fact that the Commission ultimately denied the application for final site plan approval. Specifically, the question which still requires resolution in Gateway II is whether the Commission erred in construing the subject premises to be designated in the R-PHD-SU zone. Accordingly, this court finds that the Gateway II appeal has not been rendered moot and therefore, the Gateway II appeal cannot be dismissed on this ground.
Next, this court will address whether the R-PHD-SU zone is a floating zone that has expired. A floating zone is a special detailed use district of undetermined location in which the proposed type, size and form of structures must be pre-approved, and which is legislatively deemed in advance to be compatible with the area in which the zone is eventually placed, if specified standards in the zoning regulations are met. Schwartzv. Planning and Zoning Commission, 168 Conn. 20, 22, 357 A.2d 495
(1975). A floating zone "differs from the traditional `Euclidean' zone in that it has no defined boundaries and is said to `float' over the entire area where it may eventually be established." Id. "Since the floating zone regulations establish a zone for a type of use with an undetermined location, the zone can technically be applied anywhere in the CT Page 13784 municipality." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 3.8, p. 33. "The floating zone is a zoning district that is not mapped when adopted; at some later date the previously defined zone will be placed on the ground, usually at the request of the affected landowner(s)." Heithaus v. Planning Commission, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 168123 (March 15, 2000, Hickey, J.) (26 Conn. L. Rptr. 486). When an application to apply a floating zone to a particular property is granted, the zone boundaries of the area are altered and a new zone is carved out of an existing one. Homart Development Co. v. Planning and Zoning Commission,26 Conn. App. 212, 215, 600 A.2d 13 (1991). In other words, once a floating zone "lands," the zone of the property is changed in the same way as a conventional zone change.
In this case, the record reveals that the Commission adopted the R-PHD-SU zone in 1970 in order "to encourage attractive, safe, decent and sanitary housing for all [t]own residents or employees, present and future, without regard to race, color, creed, national origin or economic status," and for the purpose of serving the housing needs of "those [t]own residents and employees who seek small residential units at reasonable cost." (Gateway I,[18] ROR, Item 56b, minutes of regular meeting of the Commission held on March 17, 1970, p. 29-33 Gateway II, ROR, Item 78: Greenwich Zoning Regs., § 6-62 (a)-(b).) The only principal permitted use of the zone is for multi-family dwellings (GatewayII ROR, Item 78: Greenwich Zoning Regs., § 6-70.) Furthermore, the proposed type, size and form of structures to be placed within the R-PHD-SU zone must be preapproved, and a site plan and other materials must be submitted to the Commission as part of an application for initial R-PHD-SU zone approval. (Gateway II, ROR, Item 78: Greenwich Zoning Regs., §§ 6-64 — 6-74.) Approval of an application requesting an R-PHD-SU zone change must follow a properly noticed public hearing, and such approval is based upon findings by the Commission that the specified purposes of the R-PHD-SU zone will be served and that the zone change will not be detrimental to the health, safety property values and residential character of the neighborhood, nor materially adversely affect single family residential areas. (Gateway II, ROR, Item 78: Greenwich Zoning Regs., § 6-72.) According to Greenwich's regulations, however, an R-PHD-SU zone "may be located only in those areas shown on the town'splan of development for planned housing design as adopted by the Commission and approved by the representative town meeting." (Emphasis added.) (Gateway II, ROR., Item 78: Greenwich Zoning Regs., § 6-63;Gateway I, ROR, 56b, minutes of regular meeting of the Commission held on March 17, 1970, p. 30.)
While the R-PHD-SU zone described above resembles what has been recognized as a "floating zone," the zone does not strictly fit that CT Page 13785 definition, since the Commission designated the areas in which the R-PHD-SU zone could be located by providing, in section 6-63, that the R-PHD-SU zone could only be placed "in those areas shown on the town's plan of development for planned housing design . . ." (Gateway II, ROR, Item 78: Greenwich Zoning Regs., § 6-63; Gateway I, ROR, 56b, minutes of regular meeting of the Commission held on March 17, 1970, p. 30.) Consequently, the R-PHD-SU zone differs from a typical floating zone to the extent that it is a special detailed use district of determined, rather than undetermined, location; see Schwartz v. Planning and ZoningCommission, supra, 168 Conn. 22; and to the extent that the areas potentially within the zoning district were mapped, rather than unmapped, when the zone was adopted. See Heithaus v. Planning Commission, supra, Superior Court, Docket No. 168123 (26 Conn. L. Rptr. 486). Even if this court were to characterize the R-PHD-SU zone as a floating zone, such a finding would not, by itself; advance Gateway's argument that the zone has expired. As noted above, when an application to apply a floating zone to a particular property is granted, the zone boundaries of the area are altered and a new zone is carved out of an existing one. HomartDevelopment Co. v. Planning and Zoning Commission, 26 Conn. App. 212,215, 600 A.2d 13 (1991). Stated differently, once a floating zone "lands," as the R-PHD-SU zone did upon the subject premises, the zone of the property is changed in the same way as a conventional zone change. Thus, even if the R-PHD-SU zone was a floating zone when adopted by the Commission in 1970, the zone "landed" or was placed on the ground in 1989, when the Commission approved the zone change for the subject premises. (Gateway I, ROR, Item 6: 1989 approval letter; Item 7: amendment to building zone regulation map dated July 31, 1990.)
Accordingly, this court must determine whether the R-PHD-SU zone designation for the subject premises has "floated away" or expired because, pursuant to Greenwich's zoning regulations, the site plan that had been approved in connection with the zone change has expired. As previously indicated, in 1989, the Commission approved a zone change for the subject premises from an R-6 zone (residential/multi-family dwelling zone) to an R-PHD-SU zone (residential planned housing design small unit zone). (Gateway I, ROR, Item 6:1989 approval letter Gateway II, ROR, Item 78: Greenwich Zoning Regs., §§ 6-98 (R-6), 6-62 — 6-74 (R-PHD-SU).) Section 6-74 of the zoning regulations provides that, for the purpose of a zone change to an R-PHD-SU zone, "[f]ailure to complywith any time limit established by the Commission as a condition for itsapproval shall render the zone change null and void." (Emphasis added.) (Gateway II, ROR, Item 78: Greenwich Zoning Regs., § 6-74; GatewayI, ROR, Item 56a: memorandum of town planner dated March 3, 1970, p. 1-2.) Under this provision, the Commission, in its discretion, could have established a time limit as a condition for its approval of the R-PHD-SU zone change for the premises. No such time limit was imposed by the CT Page 13786 Commission, however, when it approved the zone change in 1989. (GatewayI, ROR., Item 6:1989 approval letter.) By way of contrast, it is useful to compare the discretionary language of section 6-74 with the mandatory language contained in the "sunset provisions" of sections 6-14.1 (regarding site plans) and 6-17 (regarding special permits). These "sunset provisions" provide for the automatic expiration or termination of site plan and special permit approvals if the subject land is not put to a particular use within a prescribed, three year time limit. Section 6-14.1(e) provides that "[a]ny site plan approval granted by the Commission on which construction has not started within a period of three years shall become null and void." (Gateway II, ROR, Item 78: Greenwich Zoning Regs., § 6-14.1(e).) Similarly, section 6-17 (f) provides that "[a]ny special permit granted by the Commission and not exercised within a period of three (3) years from date of decision shall become null and void" Importantly, neither the Greenwich regulations nor the General Statutes include sunset provisions" imposing automatic, prescribed time limitations on R-PHD-SU zone changes. This court notes that section 6-71 (a)(2) of the regulations (governing applications for initial R-PHD-SU zone approval) incorporates the requirements of sections "6-13 to 6-16.1 inclusive." (Gateway II ROR, Item78: Greenwich Zoning Regs., §§ 6-71, 6-13 — 6-16.1.) The provisions of sections 6-13 through 6-16.1, however, do not place any time limitations on zonechannes nor do they suggest that an R-PHD-SU zone change is necessarily dependent upon the continued validity of a site plan or special permit.
Consequently, since the Commission did not establish or impose any time limit, pursuant to section 6-74, as a condition for its 1989 approval of the R-PHD-SU zone change on the premises, and since no statute or Greenwich regulation includes a "sunset provision" authorizing the automatic expiration of an R-PHD-SU zone change, this court finds and concludes that once the 1989 zone change had been approved, it was not capable of automatic expiration or reversion to a former zone designation.[19] In other words, in order to change the zoning of the subject premises from its R-PHD-SU designation to another type of zone, affirmative steps must be taken in accordance with the zoning regulations. See e.g. General Statutes 8-3 (procedures for establishment and changing of zoning regulations and districts); Greenwich Zoning Regs., § 6-22 (authorizing zoning text or map amendments by petition of one or more property owners or the Board of Appeal, or by the Planning and Zoning Commission on its own motion). This court finds that the R-PHD-SU zoning of the subject premises has not been so changed.
In light of the above, this court finds, contrary to Gateway's assertions, that the R-PHD-SU zone designation approved in 1989 for the subject premises has not expired, despite the fact that project associated with the zone change was never constructed. This court finds CT Page 13787 that the Commission correctly interpreted the relevant sections of the zoning regulations and applied them with reasonable discretion to the facts. See Irwin v. Planning Commission, supra, 244 Conn. 628. Furthermore, this court finds that substantial evidence in the record supports the Commission's continued recognition of the premises as within the R-PHD-SU zone and therefore, Gateway's appeal cannot be sustained on this ground. Accordingly, Gateway's appeal in Gateway II must be dismissed.
Docket No. 176008 (Smith-Groh)
In denying the final site plan and special permit applications at issue in this case, the Commission assigned the reasons that (1) the dwelling unit sizes proposed for the building were too large and thus failed to comply with Greenwich's zoning regulations applicable to dwellings located within R-PHD-SU zones, and (2) the overall size of the building was too large. (Smith-Groh, ROR Item 68.) Smith-Groh[20] argues that the reasons assigned by the Commission were improper and inadequate. In response, Gateway and the Commission argue that the Commission denied the application for lawful reasons which are amply supported by the record and the zoning regulations.
As noted above, the Commission denied the final site plan and special permit application for the reason that, among other things, the dwelling unit sizes proposed for the building failed to comply with Greenwich's zoning regulations pertaining to R-PHD-SU zones.[21] (Smith-Groh, ROR, Item 68.) The Commission's decision letter dated December 20, 1999, as well as its revised decision letter dated December 22, 1999, specifically finds and states: "that the 23 proposed 1 bedroom units range in size from a minimum of 662 square feet to a maximum of 708 square feet (with the overall average of one-bedroom units at 693.7 square feet) all of which exceed the required average unit size of 650 square feet; and . . . that the four proposed 2 bedroom units also exceed the maximum allowed850 square foot average;" and "that exceeding the permitted dwelling unit size defeats the purpose of the small unit restrictions, undermines the goal of providing reasonable cost dwellings, and does not comply with regulations of the R-PHD-SU zone, particularly [sections] 6-62[22] and6-64."[23] (Emphasis added.) (Smith-Groh, ROR, Items 67, 68.) See also Commission's discussion relating to oversized nature of apartment units and ultimate decision unanimously voting to deny the application on this basis (Smith-Groh, ROR, Item 66: Minutes of public hearing (12/8/99), pp. 4-15, 34-38, 44-46.) Furthermore, the Commission's decision letters explain that "the R-PHD-SU zone was designed with incentives to meet a primary purpose of the zone — to provide attractive, decent and suitable housing at reasonable cost. . . . The incentives include a large density bonus, and restrictions on average floor area to keep dwelling CT Page 13788 units small and reasonable cost, which, per 6-62 (c)(5) [of the regulations], states that the units may be subsidized by public and/or private funds . . . and there is a reasonable doubt that the . . . units would meet that criteria. . . ." (Internal quotation marks omitted.) (Smith-Groh, ROR, Items 67, 68.)
In its memorandum, Smith-Groh does not dispute the Commission's factual findings regarding the size of the apartment units and concedes that the apartment units range in size from 662 square feet to 865 square feet, in violation of section 6-64 (c) of the zoning regulations. (Smith-Groh, Memorandum dated (6/7/00), p. 19.) The record corroborates the accuracy of these apartment unit measurements. (See e.g., Smith-Groh, ROR, Items 69j, 69l.) Nonetheless, Smith-Groh asserts that it was not required to strictly comply with the requirements of section 6-64 (c) because, pursuant to section 6-64 (a), the Commission may vary the floor area requirement for each type of unit in order to accomplish one or more of the purposes of section 6-62. Furthermore, Smith-Groh argues that the Commission, in its preliminary approval letter dated January 20, 1999, did vary the average floor area requirement to allow for units ranging in size from 600 to 900 square feet. (Smith-Groh, ROR, Item 1.) Consequently, Smith-Groh concludes that the Commission's stated reason for denying the application relating to apartment unit size is invalid and unsupported by the record.
This court finds that while section 6-64 (a) of the zoning regulations provides that the Commission, in its discretion, may vary the floor area requirement for each type of unit prescribed in section 6-64 (c),[24]
the Commission did not do so in this case. If the Commission were to vary the floor area requirement for the types of units proposed by an applicant, it would do so only upon a finding that such an action would better accomplish one or more of the purposes specified in section 6-62 of the regulations. See Greenwich Zoning Regs., §§ 6-64 (a), 6-62, supra, notes 23, 22. In this case, however, the Commission's preliminary approval letter, dated January 20, 1999, simply states that "the proposed preliminary plan is similar to the former approved plan [approved in 1989][25] for this [R-PHD-]SU zoned property for 27 units of approximately 600 to 900 sq. ft., but there are outstanding discrepancies between plans, and issues which need to be clarified so that the application cannot be considered a final and is reviewed as a preliminary."[26] (Smith-Groh, ROR, Item 1.) This court finds, contrary to Smith-Groh's assertion, that this statement is not an affirmative finding by the Commission that it was varying the floor area requirements for the types of units prescribed in section 6-64 (c) of the regulations. Furthermore, this court finds that the record does not contain any positive finding or statement by the Commission indicating that it would vary, pursuant to section 6-64 (a), the average the floor CT Page 13789 area requirements of section 6-64 (c), for purposes of Smith-Groh's application for final approval.
Consequently, this court finds that the Commission's denial of the application, for the stated reason that the large dwelling unit sizes proposed by Smith-Groh failed to comport with sections 6-62 and 6-64 of Greenwich's zoning regulations, is supported by the record and pertinent to the considerations which the Commission was required to apply under the zoning regulations. See Irwin v. Planning Zoning Commission,
supra, 244 Conn. 629. Moreover, this court finds that the Commission correctly interpreted the relevant sections of the regulations and applied them with reasonable discretion to the facts. See id., 627-28. The Applicant's appeal, therefore, cannot be sustained on this ground. Consequently, this court need not address the other reason assigned by the Commission for denying Smith-Groh's final application.[27] See id, 629 (commission's decision must be sustained if regulations and record evidence supports any one reasons assigned by commission for its action). Accordingly, Smith-Groh's appeal in Smith-Groh must be dismissed.
Docket No. 170332 (Gateway I)
In Gateway I, Gateway appeals on the ground that the Commission's preliminary approval of the application improperly refers to the premises as within the R-PHD-SU zone, in violation of the zoning regulations, since the R-PHD-SU zone designation approved in 1989 has expired. Furthermore, Gateway appeals on the ground that the Commission erred in granting the preliminary site plan approval. In response, the Commission, Pemberwick and Smith-Groh argue that the Commission did not act unreasonably or arbitrarily in interpreting its own regulations and that the prior zone change to the R-PHD-SU zone remains valid.
As previously discussed, Gateway's appeal in Gateway II, and Smith-Groh's appeal in Smith-Groh, have been dismissed and therefore, Gateway's appeal in Gateway I must be dismissed as a moot case. SeeGagnon v. Planning Commission, supra, 222 Conn. 294, 296-97 (commission's decision regarding resubdivision application rendered moot the appeal from the original subdivision approval); Baumer v. Commission, supra,45 Conn. App. 653, 656 (commission's approval of revised site plan rendered appeal from earlier site plan approval moot); Jenkins v.Planning and Zoning Commission, supra, Superior Court, Docket No. 162595, 170006 (court dismissed earlier one of two consolidated appeals as moot where commission's approval of latter application for site plan and special permit modifications found sustainable and supported by record). This court has already determined that the Commission's actions, in denying the final site plan and special permit application, CT Page 13790 did not provide any ground for sustaining either the Gateway II orSmith-Groh appeal. Consequently, any harm to Gateway stemming from the Commission's preliminary approval of the application at issue in GatewayI, no longer presents a justiciable issue. Accordingly, Gateway's appeal in Gateway I must be dismissed.
 VI. CONCLUSION
For the foregoing reasons, Gateway's appeals in Gateway I and GatewayII, respectively, and Smith-Groh's appeal in Smith-Groh, are dismissed.
MINTZ, J.